## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

JENNIFER PLATO,               )
                              )
            *Plaintiff*       )
                              )
v.                            )          No.  1:12-cv-319-DBH
                              )
CAROLYN W. COLVIN,[1]         )
Acting Commissioner of Social Security,   )
                              )
            *Defendant*       )


### RECOMMENDED DECISION ON MOTION TO REMAND AND REPORT AND RECOMMENDED DECISION ON THE MERITS

The plaintiff in this Social Security Disability ("SSD") appeal moves to remand the case to the Social Security Administration.  She has also filed an appeal of the denial of her application for benefits, citing five alleged errors.  I recommend that the court deny the motion to remand and affirm the commissioner's decision.

### I.  Motion to Remand

The plaintiff seeks remand under 42 U.S.C. § 405(g), asserting that she has new material evidence to support her claim and that there is good cause for her failure to present the evidence to the administrative law judge who conducted her hearing.  Memorandum of Law in Support of Motion to Remand on Behalf of Plaintiff Jennifer R. Plato ("Remand Motion") (ECF No. 11-1) at 1.   The commissioner opposes the motion.  Defendant's Response to Plaintiff's Motion for Remand for Consideration of New and Material Evidence ("Remand Opposition") (ECF No. 18) at 1.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.

Sentence six of 42 U.S.C. § 405(g) provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a  showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g).

Typically, a request for a sentence six remand concerns "new evidence . . . tendered after the ALJ [administrative law judge] decision." *Mills v. Apfel,* 244 F.3d 1, 5 (1st Cir. 2001) (citation and internal quotation marks omitted).   Sentence six allows for a "pre-judgment remand" and obviates a ruling on the existing administrative decision based on the existence of good cause for remanding for further evidentiary proceedings. *See, e.g.*, *Seavey v. Barnhart,* 276 F.3d 1, 13 (1st Cir. 2001); *Freeman v. Barnhart,* 274 F.3d 606, 610 (1st Cir. 2001).

On a cautionary level, the First Circuit has observed that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided — to the end that the process not bog down and unduly impede the timely resolution of social security appeals." *Evangelista v. Secretary of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir. 1987). Thus, prejudgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is new and "material," as in "necessary to develop the facts of the case fully[.]" *Id.* at 139.

New evidence of an infirmity or impairment is not automatically material.  The party seeking remand must show that the evidence is not merely cumulative and that consideration of the evidence is essential to a fair hearing, *see id*.; in other words, that the earlier decision "might reasonably have been different" had the evidence been considered by the commissioner, *id.* at 140 (citation and internal quotation marks omitted).  There is a temporal concern, as well.  The

evidence must be material to the issue of "the claimant's condition during the time period for which benefits were denied[,]" as opposed to the development of a new disability. *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988).  Here, the relevant time frame is the period from January 1, 2008, the alleged date of onset of disability, through August 4, 2011, the date of the adverse decision of which the plaintiff complains.  Record at 14, 22.

Here, the plaintiff proffers six new exhibits: a report from Dr. Anca Sisu dated April 2, 2013; an opinion letter from Dr. Charles Radis dated August 22, 2012, and accompanying records; a report of an EMG and nerve conduction study by Dr. Anthony Pakiam dated April 5, 2012; an opinion letter from Dr. Mark Stevens dated January 6, 2012, and accompanying records; a report by Edward Harshman, M.D., dated December 9, 2011; and employee wage data from the plaintiff's former employer "obtained . . . in April 2013."  Remand Motion at 2-9.  The defendant takes the position that this evidence is not material, and that, therefore, remand is not indicated.  Remand Opposition at 2.

Because the defendant does not contend that the plaintiff's proffered evidence is cumulative and, indeed, characterizes it as "new," *id.* at 2, I will not consider the requirement that the newly-offered evidence not be cumulative.

### A.  Dr. Sisu

The defendant asserts that Dr. Sisu's opinion would not have changed the administrative law judge's decision because the limitations she found were similar to those found by Dr. Leeson, whose opinion the administrative law judge rejected.  Remand Opposition at 6.  The plaintiff responds that the administrative law judge did not reject Dr. Leeson's report because it was inconsistent with those of Drs. Chamberlin and Hall, but because his records were inconsistent with his report. Reply in Support of Plaintiff's Motion to Remand ("Reply") (ECF

3

No. 21) at 4-5.  However, the question is not whether the proffered report may be rejected for the same reason as was a timely medical opinion, but rather whether the proffered report might reasonably cause the outcome of the application to be different.  In the case of Dr. Sisu's opinion, that question must be answered in the negative.  Dr. Sisu's opinions conflict with those of Drs. Chamberlin and Hall, *see* Record at 48-54, 292-99, upon which the administrative law judge expressly relied.  Accordingly, Dr. Sisu's opinion is not material, and she specifically declined to provide an analysis of the effect of her diagnoses on the plaintiff's functional capacity,[2] ECF No. 11-3 at [5], and noted that she has had "few interactions with" the plaintiff since becoming her primary care physician in October 2012, *id*. at [4], well after the date of the administrative law judge's opinion.

### B.  Dr. Radis's Opinion Letter

The defendant contends that Dr. Radis's post-decision opinion letter is not material because Dr. Radis agreed with Dr. Harshman's opinion, ECF No. 11-4 at [1], which she asserts is not material for reasons discussed *infra*, with the exception of Dr. Harshman's conclusion that the plaintiff could lift and carry up to 15 pounds.  Remand Opposition at 5-6.  The past jobs to which the administrative law judge determined that the plaintiff could return were classified as sedentary, a level which requires lifting only of up to 10 pounds.  *See* Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) §§ 239.362-014 (customer service representative); 249.362-026 (order clerk).  The treatment records attached to Dr. Radis's opinion letter also

---

[2] At oral argument, the plaintiff's attorney contended that Dr. Sisu's refusal to provide an opinion on the effect of her diagnosis on the plaintiff's ability to perform work-related activities was appropriate, because this is an issue reserved to the commissioner.  It is not.  Only the question of whether a claimant is disabled is reserved to the commissioner.  20 C.F.R. § 404.1527(d)(1) & (3).  Medical opinion concerning the effect of an impairment on a claimant's ability to perform work-related activities is exactly what the commissioner needs in order to formulate a residual functional capacity ("RFC").

post-date the administrative law judge's opinion.  This report is not material within the meaning of the law applicable to the motion for remand.

### C.  EMG and Nerve Conduction Study

The defendant contends that the EMG and nerve conduction tests offered by the plaintiff are not material, because the tests were conducted after the date of the administrative law judge's opinion and thus "only indicate the severity of Plaintiff's ankylosing spondylitis and neck pain on the day of testing – April 5, 2012."  Remand Opposition at 2.  She also points out that the testing revealed only mild bilateral median neuropathies, which she asserts would not change the outcome of the decision.  *Id*. at 3.

The plaintiff responds that Dr. Radis recommended EMG testing prior to the date of the administrative law judge's decision, the decision specifically noted the lack of such testing, and the plaintiff was unable to obtain the testing at that time for financial reasons.  Reply at 7.  She also contends that the testing "allowed Dr. Radis to confirm a diagnosis of carpal tunnel syndrome" and to refer her to a specialist for injection and decompression surgery in February 2013, "indicating a more severe impairment." *Id.*

However, the plaintiff's affidavit actually says that she was referred for an EMG and nerve conduction study "in September 2011," Affidavit of Plaintiff Jennifer R. Plato in Support of Motion to Remand (ECF No. 11-2) ¶ [4], which is after, not before, the August 4, 2011, date of the administrative law judge's decision.  Record at 22.  All of the events mentioned by the plaintiff took place after that decision was issued; indeed, the surgery took place more than 17 months after that date.  The defendant does not hold applications for benefits open for such long periods of time, nor would any applicant find such a delay desirable.  More important, I agree

that a diagnosis of "mild bilateral median neuropathies," standing alone, is not reasonably likely to cause the administrative law judge to reverse his decision and award the plaintiff benefits.

This evidence may certainly be material to a new application for benefits that the plaintiff might be able to file for the remaining period of her eligibility, through December 31, 2015. *Id.* at 16. It is not enough, however, to require remand in this case.

### D. Dr. Mark Stevens

The defendant points out that Dr. Stevens' opinion post-dates the administrative law judge's opinion and "does not make any reference to a period on or before that date." Remand Opposition at 3. She adds that Dr. Leeson rendered a similar opinion that was rejected by the administrative law judge, making it unlikely that the outcome would change based on Dr. Stevens' input. As was the case with Dr. Leeson's opinion, the defendant asserts, all of the treatment notes that form the basis of Dr. Stevens' opinion "established normal findings, other than an abnormal gait and abnormal breath sounds on August 29, 2011," both of which later resolved. *Id.* at 3-4 & n.1. Dr. Stevens' treatment note on the same date as that of his opinion letter states that the plaintiff's current therapy was "helping to keep her low back pain and ankylosing spondylitis under control." ECF No. 11-6 at [10].

The plaintiff responds that, because Dr. Stevens' notes "do not reflect any intervening drastic change in Ms. Plato's conditions," his conclusions must be presumed to relate back to the period before the date of the administrative law judge's decision. Reply at 6. This argument carries inference too far. In effect, it asks the court not only to give the plaintiff the benefit of an attenuated inference, but also to interpret Dr. Stevens' notes, which is a task to be performed only by medical professionals under Social Security law. *See, e.g., Ferrante v. Astrue*, 755 F.Supp.2d 206, 210 (D. Me. 2010); *Simpson v. Astrue*, Civil No. 09-399-P-H, 2010 WL

6

2595165, at *4 (D. Me. June 23, 2010).  If Sentence Six remands are truly to be "few and far

between," the plaintiff must present more than an inference based on an absence of evidence to

justify remand.  *See Harthun v. Commissioner of Soc. Sec.*, No. 1:07-cv-595, 2008 WL 2831808,

at *8 (W.D. Mich. July 21, 2008) ("good cause" requirement not met by solicitation of medical

opinion to contest administrative law judge's opinion).

### E.  Dr. Edward Harshman

The defendant asserts that Dr. Harshman's December 2011 opinion "also gives no

indication that it relates to a period on or before the date of the ALJ's decision."  Remand

Opposition at 4.  She adds that "there is no possibility that the opinion would have changed the

ALJ's decision[,]" because there is no conflict between the limitations assigned by Dr. Harshman

and those included in the RFC assigned to the plaintiff by the administrative law judge.  *Id*.  In

response, the plaintiff asserts that Dr. Harshman's opinion that the plaintiff could perform

"limited power and precision fine finger movements" is inconsistent with the failure of the

administrative law judge to include any fingering limitations in the plaintiff's RFC, and that the

absence of any "indication" that Dr. Harshman's report "was based upon any traumatic injury or

drastic change in [her] medical conditions that occurred in the months between his examination

and the ALJ's decision" means that his report must be read to relate back to the relevant time

period.  Reply at 5-6.

I have already rejected the latter argument as it pertains to Dr. Stevens.  As for Dr.

Harshman's opinion that the plaintiff can "do limited power and precision fine finger

movements," ECF No. 11-7 at 3, the defendant argues that the discrepancy between this opinion

and the RFC "has no impact on the ALJ's decision" because the jobs to which the administrative

law judge found that the plaintiff could return require only frequent fingering, rather than

constant.  Remand Opposition at 5.  Neither side provides any authority comparing a medical source's finding of "limited" fingering and the DOT's use of "frequent" in categorizing fingering.

A limitation to "frequent" fingering means that the claimant can only perform the activity between one-third and two-thirds of the time.  *Boyd v. Astrue*, C/A No. 4:10-237-CMC-TER, 2011 WL 3652299, at *3 (D.S.C. Aug. 17, 2011).  It is reasonable to conclude that Dr. Harshman's conclusion that the plaintiff can "do limited . . . fine finger movements" equates to performing such movements between one-third and two-thirds of the work time, particularly given his finding that "[m]annual dexterity is intact."  ECF No. 11-7 at 2.  Therefore, any error by the administrative law judge in failing to include such a limitation in the plaintiff's RFC is harmless error.

### F.  Employment Data

Finally, the plaintiff proffers records from her last employer to support her contention that the administrative law judge wrongly questioned her credibility "based upon her continued work past the onset date of her disability" and to show that she was having "problems with absenteeism" due to her physical limitations.  Remand Motion at 9-10.  She acknowledges that this information "may have been available" before the date of the administrative law judge's opinion, but "there was no indication prior to the hearing that [her] continued work activity was an issue" and "the ALJ indicated on the record that he could obtain [her] employee records if necessary."  *Id.* at 10.

The defendant responds that the plaintiff's post-onset work was only one of several reasons given by the administrative law judge for discounting the plaintiff's credibility, and that the administrative law judge did not use the amounts earned but rather the fact that the plaintiff

worked to discount her credibility.  Remand Opposition at 7.  She correctly points out that the proffered employment data does not establish that the plaintiff did not work at all after her alleged onset date but rather shows that she had earnings in 2008 and 2009.  *Id*.[3]; *see also* ECF No. 11-11.

The administrative law judge first discussed the plaintiff's credibility, after reciting her post-onset-date earnings, as being "address[ed]" by this evidence.  Record at 17.  He later stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment for the reasons outlined below.
>
> In terms of the claimant's alleged pain and limited mobility that purportedly results from musculoskeletal impairments, there are two fundamental issues in this case. The first is a dearth of clinical evidence that substantiates the claimant's professed incapacity.  The second issue deals with inconsistencies within the record, where Ms. Plato's reported activities and her favorable response to treatment as shown in the medical record contradicts the level of severe symptoms that she professes to experience.
>
> * * *
>
> She also alleged initially that "because of my condition", she had to cut back from full time to part time work in 2007; she could only work part time in 2008, and she had to stop working completely in 2009.  Yet a review of the earnings record indicates that the claimant has rarely been employed on a full-time basis.  For example, she posted no wages at all in 2001 and 2002; after she began work at L.L. Bean, earnings indicate part-time work in 2003 and 2004; and seasonal work from 2005 through 2009.
>
> The claimant testified that there is "nothing that I do" that does not cause pain, yet she is able to drive, perform light housework, cook, shop and tend to her personal needs.   Treatment records from primary care provider Tom Leeson, D.O. of Family Medicine Institute (FMI) also fail to corroborate the claimant's level of incapacity.  For example, in March 2009, she and her partner drove to Florida for vacation.  The claimant

---

[3] The $5,663.00 "earnings" cited by the administrative law judge for one quarter of 2009, Record at 17, was actually disability payments.  ECF No. 8-5 at 19.

testified that the trip took longer than usual due to discomfort, yet she was still able to ride in a car for 6 days.  After vacation, the record shows the claimant returned to work: when questioned about her diet in April 2009, Dr. Leeson noted that she 'usually grazed' while working second shift.

The record reflects that prior to applying for disability[,] the claimant was quite active; she played softball, skated, kayaked, hiked and swam. While the claimant's medically determinable impairments may impede here ability to take part in such activities, this does not preclude the ability to engage in work-related activities.  Despite the claimant's testimony that she can only sit or walk for short periods due to pain and stiffness, physical examinations fail to cite positive straight leg raises, an alteration in gait or station, and there is no documentation of any lower extremity impairment whatsoever.

Record at 19-20 (citations omitted).

The plaintiff responds that the administrative law judge's credibility finding "was based primarily upon his determination that Ms. Plato's work activity after January 1, 2008 appeared to constitute substantial gainful activity, rather than upon a determination that she performed work activity after the onset date on her application."  Reply at 1.  The preceding excerpt from the administrative law judge's opinion, as well as his finding that the plaintiff "has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date[,]" Finding 2, Record at 16, establish that this was not in fact the case.  This is not the "most crucial aspect" of the credibility analysis.  Reply at 4.  The administrative law judge provided sufficient support for his credibility analysis, independent of the employment data.  Accordingly, the additional employment data is not material.

This conclusion makes it unnecessary to address the plaintiff's reliance on the administrative law judge's failure to seek records from her employer after telling the plaintiff and her representative at the close of the hearing that he could "always request the employment records directly from L.L. Bean if [he had] any confusion about whether there was substantial

gainful activity after January 1, 2008." Record at 61.  An unfulfilled promise made to a claimant by an administrative law judge is cause for concern.  *See Bard v. Astrue*, No. 1:12-cv-22-NT, 2012 WL 5258197, at *3 (D. Me. Sept. 28, 2012).  In this case, however, in addition to the sufficiency of the administrative law judge's explanation of other factors upon which his evaluation of the plaintiff's credibility was based, he only said that he could seek the records directly from the plaintiff's employer, if he had any confusion about the question of substantial gainful activity after the alleged onset date.  As I have already noted, the administrative law judge found that there was none, Record at 16, and, therefore, the employment records were not reasonably likely to change the outcome of the administrative law judge's ultimate decision.

## II.  Appeal[4]

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from ankylosing spondylosis, left epicondylitis, and osteoarthritis of the sacroiliac joints, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, Record at 17-18; that she retained the RFC to perform less than the full range of sedentary work, because she must have the opportunity to alternate sitting and standing for five minutes between normal breaks, could climb ramps and stairs occasionally but never ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, and crouch but never crawl,

---

[4] This action is properly brought under 42 U.S.C. § 405(g).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on June 13, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

must avoid forceful gripping and/or grasping with the left upper extremity, and must avoid work environments with unprotected heights and irregular or uneven walking terrain, Finding 5, *id.* at 18; that she was capable of performing her past relevant work as an order taker, or as a customer service representative, Finding 6, *id.* at 21; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time from January 1, 2008, her disability onset date, through the date of the decision, August 4, 2011, Finding 7, *id.* at 22. The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's appeal also implicates Step 3 of the sequential review process, at which stage a claimant bears the burden of proving that her impairment or combination of impairments meets or equals the Listings.  20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).  To meet a listed impairment, the claimant's medical findings (*i.e.*, symptoms, signs, and laboratory findings) must match those described in the listing for that impairment.  20 C.F.R. §§ 404.1525(a), 404.1528.  To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings."  20 C.F.R. § 404.1526(A).  Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1526(b).

## A.  Discussion

## 1.  Listings 1.02, 1.04, and 14.09

The plaintiff's first allegation of error is an assertion that the administrative law judge should have found that she met the criteria of Listing 1.02, major dysfunction of a joint, Listing 1.04, disorders of the spine, or Listing 14.09, inflammatory arthritis.  Itemized Statement of Specific Errors ("Itemized Statement") (ECF No. 10) at 6-7.

She apparently means to refer to her right arm with respect to Listing 1.02, but the arm is not a joint.  Even if the allegedly impaired joint had been specified, however, the plaintiff proffers no evidence other than her own reports of subjective symptoms as evidence with respect to this Listing.  *Id.*   It is bedrock Social Security law that a claimant successfully bears her burden of proof on a claim that her impairment meets or equals the criteria of a listed impairment only when the objective medical findings, and not the claimant's subjective testimony, match those criteria.  *Steeves v. Barnhart*, No. 04-152-B-W, 2005 WL 757877, at *4 (D. Me. Mar. 14,

13

2005).  A claimant's "statements alone are not enough to establish that there is a physical or mental impairment."  20 C.F.R. § 404.1528(a); *see also* 20 C.F.R. § 404.1525.

The plaintiff does cite some medical evidence in support of her brief argument with respect to Listing 1.04, disorders of the spine.  Itemized Statement at 7.  Specifically, she cites Exhibit 1F, a December 2008 magnetic resonance imaging ("MRI") report, a January 2008 x-ray of her lumbar spine, and a February 2008 assessment of "slowly progressive ankylosing spondylitis."  Listing 1.04 requires medical evidence of "compromise of a nerve root . . . or the spinal cord" and medical evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. Listing 1.04.

The MRI report cited by the plaintiff finds "degenerative changes, but no neurologically significant abnormality" and does not mention compromise of a nerve root or of the spinal cord, nor any nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.  Record at 258-61.  The single page of the record cited by the plaintiff in reference to the January 2008 x-ray and February 2008 assessment does not mention any of the required elements of Listing 1.04.  *Id.* at 271.  The plaintiff asserts without citation to authority that ankylosing spondylitis "can lead to lumbar spinal stenosis over the course of time[.]" Itemized Statement at 7.

There are two problems with this assertion.  First, the lumbar spinal stenosis must be in existence at the time the plaintiff's application for benefits is considered, and be disabling at the alleged date of onset, rather than a mere future possibility.  Second, it is not common knowledge that ankylosing spondylitis can lead to lumbar spinal stenosis.  The plaintiff is drawing, and demands that the administrative law judge draw, a conclusion from raw medical evidence.  This is forbidden by longstanding Social Security law.  *See, e.g., Murwin v. Astrue*, No. 1:11-cv-376-

DBH, 2012 WL 2923535, at *3 (D. Me. June 30, 2012); *MacDougall v. Astrue*, No. 2:10-cv-400-GZS, 2011 WL 4566268, at *5 (D. Me. Sept. 29, 2011).

With respect to Listing 14.09, the plaintiff contends that a finding by Dr. Radis in July 2009 to the effect that the plaintiff "has markedly reduced rotation and side bending of the cervical spine (only 25% of normal)" "tended to show that fixation of the degree required by the listing was demonstrable." Itemized Statement at 7.  This is a reference to the administrative law judge's statement that the Listing is met "with clinical evidence of ankylosing spondylitis . . . with fixation of the dorsolumbar or cervical spine as shown by appropriate imaging and measured on a physical examination at 45˚ or more of flexion from the vertical position[,]" Record at 18,  the wording of which is taken from Listing 14.09(C)(1).  However, a limitation of *movement* of the spine to only 25% of the normal range is clearly not the same as a *fixation* of the spine at least 45 degrees from the vertical position.  Contrary to the plaintiff's interpretation, Dr. Radis's reading does not even "tend[] to show that fixation of the degree required by the listing was demonstrable."

The fact that the administrative law judge did not "articulate any reason for disregarding or discrediting" any of the evidence upon which the plaintiff relies in connection with her Listing argument, Itemized Statement at 7, cannot serve as a basis for remand when none of that evidence supports a finding that the plaintiff met any of the specified Listings.

### 2.  Treating Physician Opinions

The plaintiff next argues that the administrative law judge "failed to give adequate weight to the medical opinions of [her] treating sources." *Id*. at 8-10.   She refers specifically to the opinions of Dr. Leeson and Dr. Radis.  *Id*.

First, however, the plaintiff complains extensively about the occasional appearance of the term "ankylosing spondylosis" in the administrative law judge's opinion, when the evidence only supports the existence of "ankylosing spondylitis." *Id.* at 8-9. The administrative law judge's finding uses "spondylosis." Record at 17. Both terms are used in the body of the opinion. The two terms have different, although related, meanings, but the administrative law judge appears to use them interchangeably. Thus, as the plaintiff herself notes, Itemized Statement at 8, the medical expert, Dr. William Hall, testified at hearing that the plaintiff suffered from ankylosing spondylitis, Record at 27, 51-52, yet the opinion reports that Dr. Hall "opined that the clinical data was supportive of the diagnos[i]s of ankylosing spondylosis[.]" *Id.* at 21.

The administrative law judge also referred to Listing 14.09 and correctly reported that it requires evidence of "ankylosing spondylitis or other spondyloarthropathy," *id.* at 18, which is inconsistent with his earlier finding of ankylosing spondylosis, *id.* at 17. Similarly, he stated that the plaintiff alleged disability "due to ankylosing spondylosis," *id.*, when in fact she alleged disability due to ankylosing spondylitis. *Id.* at 182.

Particularly where, as here, the plaintiff identifies none of the physical limitations included in the RFC assigned to her by the administrative law judge as the exclusive result of ankylosing spondylosis rather than ankylosing spondylitis,[5] the court can only conclude that the use of "spondylosis" in the opinion is a scrivener's error that has caused no harm to the plaintiff. *Armstrong v. Colvin*, No. 6:11-CV-4172-VEH, 2013 WL 1180305, at *3 (N.D. Ala. Mar. 18.,

---

[5] At oral argument, the plaintiff's attorney asserted, without citation to authority, that spondylosis is more common than spondylitis and involves less severe pain and fewer restrictions than does spondylitis. This is not a matter of common knowledge and, in the absence of authority, cannot serve as the basis for a finding urged upon the court by the plaintiff to the effect that the administrative law judge meant to find that the plaintiff suffered from spondylosis rather than spondylitis, a conclusion that she contends is not supported by the medical evidence of record. Under the circumstances, the court must decline the plaintiff's invitation.

2013).  *See generally Russell v. Astrue*, No. C07-2000-RAJ, 2008 WL 4542439, at *5 n.2 (W.D.

Wash. Oct. 8, 2008) (reference to psoriasis scrivener's error, obvious from context, for cirrhosis).

Substantively, the plaintiff contends that the administrative law judge "did not provide

good reasons for disregarding the medical opinion of Dr. Leeson and giving little weight to the

medical opinion of Dr. Radis."  Itemized Statement at 8.  With respect to Dr. Leeson, the

administrative law judge said:

> As for the opinion evidence, there are contradictions within the clinical record that render a medical report from Dr. Leeson of little use.  In May 2010, the doctor wrote that he had recommended that his patient seek disability benefits due to "increasingly debilitating" symptoms from ankylosing spondylitis and somatic dysfunction.  These symptoms, he stated, included difficulty sitting, back muscle spasms and tingling in her arms; they were "obstructive to her ability to work", and had proved "refractory" to both manual and pharmaceutical efforts (Ex. 7F).  A review of treatment record, though, fails to bear out this statement.
>
> More specifically, at the first two office visits with Dr. Leeson in October 2008, Ms. Plato was treated for hypertension and a cough.  Her first report of left shoulder and neck pain came in December, when she was treated with osteopathic manipulations, with "good resolution of motion and of symptoms".  Dr. Leeson treated the claimant five more times in 2009: twice for hypertension, once for an allergic reaction to medication, once for dietary information, and <u>once</u> (March 2009) for back and elbow pain.  At each visit, physical examinations consistently cite no limited range of motion, fatigue, limb weakness, muscle cramps or pain behaviors (Ex. 1F).  These objective findings are wholly inconsistent with Dr. Leeson's 2010 assertion that Ms. Plato experiences incapacitating pain and restricted mobility (Ex. 7F).

Record at 20 (emphasis in original).

The plaintiff complains that this analysis "entirely ignores Dr. Leeson's statement that he

diagnosed and treated the Plaintiff 'in cooperative effort with consulting physicians, including

Charles Radis D.O.'" and "the evidence that Dr. Radis diagnosed the plaintiff with ankylosing

spondylitis and provided extensive treatment to the Plaintiff for that condition beginning in

January 2008."  Itemized Statement at 9.  Dr. Leeson did write "to whom it may concern" that,

17

from October 2008 to February 2010, he found that the plaintiff's ongoing issues related to ankylosing spondylitis were growing increasingly debilitating "in cooperative effort with consulting physicians, including Charles Radis D.O."  Record at 314.  Even if the reference to treatment "in cooperative effort with" Dr. Radis can be taken, as the plaintiff contends, to import into Dr. Leeson's records all of Dr. Radis's treatment records, the administrative law judge's opinion still provides sufficient reasons for rejecting Dr. Leeson's conclusions as set forth in the two paragraphs quoted above.  *See, e.g., Heath v. Astrue*, No. 1:12-cv-99-DBH, 2012 WL 6913440, at *11 (D. Me. Dec. 30, 2012).

The same is true of the administrative law judge's treatment of Dr. Radis's opinions.  The plaintiff contends that

> [T]he ALJ chose to give little weight to Dr. Radis's opinion concerning the Plaintiff's limitations because Dr. Radis felt that he could not adequately provide multiple evaluations of the Plaintiff's ability to do work-related activities in 2011, although the scope of that assessment appears to be largely outside the scope of Dr. Radis's area of medical specialization.  The ALJ did not address whether the assessments made by Dr. Radis in 2008 were given any weight or state any reason giving controlling or greater weight to that evidence, while stating that "considerable weight" was given to the hearing testimony of Dr. Hall, a non-treating and non-examining medical expert.

Itemized Statement at 9 (citations omitted).

The administrative law judge wrote:

> Similarly, Dr. Radis' clinical findings are not demonstrative of an individual who experiences persistently debilitating musculoskeletal impairment.  He did cite the claimant's symptoms of restricted neck motion, side bending and tenderness of the left elbow and paraspinal muscles as "moderately severe" in 2011.  However, he also noted that she receives benefit from Peroxicam, while earlier records reported "global improvement" of symptoms with the use of prednisone.  Dr. Radis also reported in 2009 that the patient could bend to within 4 inches of touching the floor without bending her knees.

> Of particular note, when asked to assess the claimant's work capacity in 2011, Dr. Radis wrote, "Because this contains multiple evaluations regarding my thoughts on how well she can lift, carry, sit, stand, or walk, I did not feel I could adequately fill this out.  I do not know how much she can safely carry nor can I answer the question of whether she can sit for long period of time without interruption or the total amount she can sit".   He did opine, though, that the claimant had "considerable discomfort in the hands with overuse", and only partially responded to treatment.

Record at 20-21 (citations omitted).

Since Dr. Radis declined to express an opinion about the physical limitations caused by the impairment for which he was treating the plaintiff, there was no need to accept or reject his opinions, making it unnecessary to "provide . . . good reasons for failing to give adequate weight," *id.* at 9, to his opinions.  Dr. Radis presumably wrote in 2011 with his records from 2008 in mind.  The plaintiff has not identified any entries in those records indicating limitations on work-related activities, and I have found none.  Record at 270-74.

To the extent that the plaintiff means to argue that the administrative law judge erred by relying on the hearing testimony of Dr. Hall, that argument also fails.  *See, e.g., Anglin v. Massanari*, 18 Fed.Appx. 551, 553, 2001 WL 1002820, at **2 (9th Cir. 2001); *Bohorquez v. Barnhart*, No. EDCV 04-0900-SS, 2006 WL 343927, at *4, *8 (C.D. Cal. Feb. 13, 2006).

The plaintiff is not entitled to remand on the basis of this argument.

### 3.  Failure to Develop the Record

The plaintiff next contends, in conclusory fashion, that the administrative law judge "ha[s] a responsibility to attempt to obtain additional information from Plaintiff's treating sources before determining that their opinions were inadequate based upon a lack of supporting documentation[,]" citing 20 C.F.R. § 404.1512.  However, the obligation to contact treating sources arises only when "the evidence we receive from your treating physician . . . is inadequate

for us to determine whether you are disabled[.]"  20 C.F.R. § 404.1512(e).  "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  The plaintiff makes no attempt to demonstrate that any of these circumstances is apparent in the administrative law judge's opinion.

An administrative law judge is not required to further develop the record when a claimant is represented, as the plaintiff was here, Record at 27, unless she does not understand any of the treating physicians' records or finds gaps in those records or the records are otherwise inadequate to allow her to decide the case.  20 C.F.R. § 404.1512(e)(1); *see also White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  In order to obtain remand on this basis, the plaintiff must point to specific facts that were not brought out during the hearing and provide proof that additional medical evidence existed.  *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

The plaintiff's submission does not meet this standard.

### 4. RFC and Credibility Findings

The plaintiff next challenges the RFC assigned to her by the administrative law judge and his "adverse credibility findings," contending that they are not supported by substantial evidence. Itemized Statement at 10-11.  This portion of the plaintiff's appeal focuses on her work history after the alleged onset date, January 1, 2008.  Record at 14.  She faults the administrative law judge for finding that she had not engaged in substantial gainful activity since her alleged onset and then "proceed[ing] to use evidence that he found demonstrated a continuation of past relevant work and substantial gainful activity as the basis for the [RFC] assessment and an adverse credibility determination."  Itemized Statement at 10.

20

The plaintiff complains that the administrative law judge "found that [her] earnings record reflected a continuation of her past relevant work after her disability onset date, and used that finding at the initial basis for his RFC assessment[.]"  *Id*. at 11.  This was done, she asserts, without any "particular findings" about the sources of her reported post-onset disability or the accommodations that she required in order to do this work.  *Id*.  The plaintiff does not explain how or why the source of the claimant's income is relevant to the administrative law judge's assessment of RFC and credibility in this case.  There was no need for the administrative law judge to make such a finding.  Contrary to the plaintiff's argument, nothing in 20 C.F.R. § 404.1545 requires it.

The administrative law judge did find that the plaintiff had not engaged in substantial gainful activity after her alleged date of onset, Finding 1, Record at 16, but he also noted that "whether [her] work activity [after this date] rose to the level of substantial gainful activity is questionable."  *Id*. at 17.  He later stated that "a breakout of the claimant's earnings shows . . . that she earned above SGA throughout 2008[.]"  *Id*. at 19.  However, it is not this apparent inconsistency that is the basis of the plaintiff's argument.  Rather, she apparently contends that the administrative law judge would have been required to find her disabled, if he took into account her testimony about accommodations that she "required" in order to work after the alleged date of onset.

Again, the plaintiff omits the next step in the analysis.  She does not cite any evidence establishing the medical necessity of the accommodations,[6] nor does she explain how those accommodations would make her past relevant work impossible.  The only accommodations about which the plaintiff testified on the pages of the record she cites were "ergonomically

---

[6] At oral argument, the plaintiff's attorney conceded that the record contains "not much evidence" concerning the work accommodations that the plaintiff contends were required in order for her to work after the alleged date of onset of disability, beyond her own testimony.

perfect" work stations that allowed her to sit or stand at will and to have stretch breaks as needed.  Record at 47-48.  The hypothetical question posed to the vocational expert by the administrative law judge included a position change between normal breaks for five minutes.  *Id.* at 58-59.  The vocational expert then testified that the plaintiff's past work as a customer service representative and an order taker would fit within the parameters of the hypothetical question. *Id.* at 59.

The physical RFC assessment completed by Richard T. Chamberlin, M.D., the state-agency medical reviewer, found that the plaintiff needed to "[c]hange position every hour between normal breaks."  *Id.* at 293.  The medical expert, Dr. Hall, testified at hearing that Dr. Chamberlin's medical limitations were supportable.  *Id.* at 54.  The plaintiff's representative did not ask Dr. Hall any questions and asked the vocational expert only about the effect of missing two work days per month.  *Id.* at 54, 60.  Dr. Chamberlin's report and Dr. Hall's testimony are substantial evidence that supports the administrative law judge's conclusion that the plaintiff could return to her past relevant work.  "Normal breaks" occur approximately every two hours, *see, e.g., Shorey v. Astrue*, No. 1:11-cv-414-JAW, 2012 WL 3475790, at *3 (D. Me. July 13, 2012) (defendant's claims adjudicators instructed that normal breaks are lunch, morning and afternoon breaks in an 8-hour work day); *Compston v. Astrue*, Civil Action No. 2:10-cv-818, 2011 WL 4360106, at *11 n.5 (S.D. Ohio July 18, 2011) (normal breaks are 15 minutes in morning and afternoon), so the limitation in the RFC assigned by the administrative law judge is identical to an allowance for change of position "every hour."   Thus, there is sufficient evidentiary support in the record for this aspect of the RFC assigned to the plaintiff by the administrative law judge, even without any consideration of his evaluation of her credibility.

Even more important in this regard is the fact that the applicable standard for ability to return to past relevant work has two alternatives: the claimant's past relevant work as it is generally performed in the national economy *or* as it was performed by the claimant. 20 C.F.R. § 404.1560(b)(2); *see also Parkes v. Astrue*, No. 1:11-cv-99-NT, 2012 WL 113307, at *5 (D. Me. Jan. 11, 2012). The RFC assigned to the plaintiff and supported by substantial medical evidence does not prevent her from returning to her past relevant work as she performed it.

The plaintiff is not entitled to remand on this basis.

### 5. RFC

The plaintiff next faults the administrative judge for failing to address the vocational expert's testimony, in response to a question from the plaintiff's representative, that an employer would not retain an employee who missed two days of work every month. Itemized Statement at 11-12. She does not cite any medical evidence in support of that scenario. Dr. Chamberlin specifically rejected a claim that stomach upset caused by medication would affect the plaintiff's work capacity. Record at 297. In the absence of any medical evidence to support the representative's hypothetical question, there was no need for the administrative law judge to address the question or the vocational expert's answer.

### 6. The Hearing Transcript

The final argument raised by the plaintiff is an assertion that she is entitled to a remand because "several portions" of the testimony of Dr. Hall "were inaudible and could not be transcribed." Itemized Statement at 12.[7]

---

[7] The plaintiff asserts that the particular portions of Dr. Hall's testimony that are discusses *infra* are "inaudible, incomplete, or inaccurate" as presented in the transcript. Itemized Statement at 12. She does not identify any incomplete or inaccurate passages, and, therefore, any argument based on those two characterizations has been waived.

"The failure to fully capture every word of . . . testimony in the transcript does not independently require a remand for further proceedings."  *Stefanowich v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00379-JAW, 2011 WL 4344575, at *5 (D. Me. Sept. 14, 2011) (rec. dec., *aff'd* Oct. 4, 2011).  "The issue is whether the record allows for informed judicial review."  *Id.*

> It is not enough to argue that there are too many "inaudible" comments in the transcript.  In order for such an argument to be fully developed, a plaintiff needs to explain why a particular inaudible notation in the transcript prevents meaningful review in relation to a specific issue under review.

*Leach v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00067-JAW, 2010 WL 5366300, at *4 (D. Me. Dec. 21, 2010).

Here, in a single paragraph, the plaintiff briefly refers to three specific instances of "inaudible" entries in the transcript of the testimony of Dr. Hall, the medical expert.  Itemized Statement at 12.  She says that the first instance, on page 52 of the transcript, is "testimony about the Plaintiff's impairments[.]"  *Id.*  That is not sufficient to provide for meaningful review in relation to a specific issue under review.  The plaintiff does not contend that the administrative law judge wrongly failed to find that any specific impairment from which she claimed to suffer actually did exist at the relevant time.  Given the plaintiff's presentation, it is not possible that she was harmed by any such omission from the transcript.

The plaintiff next challenges the sole "inaudible" entry on page 53 of the transcript, which she characterizes as "Dr. Hall's opinion of what listings might be met or equaled by the Plaintiff's impairments"; she adds that "most significantly, the listing identified in the transcript of Dr. Hall's testimony does not correspond to any of the listings discussed in the ALJ's decision and does not appear relevant to the other evidence in the record[.]"  *Id.*  The latter assertion is not based on any omission from the transcript, of course.  Rather, that reference to Listing 13.09C,

Record at 53, is clearly an error; the reference should be to Listing 14.09C, which is ankylosing spondylitis, the impairment discussed by the administrative law judge. The plaintiff was not harmed by this likely typographical error.

The "inaudible" entry on page 53 immediately follows the reference to Listing "13.09C." The plaintiff does not suggest that the omitted words would necessarily be favorable to her, *see Fallon v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00058-JAW, 2011 WL 167039, at *10 (D. Me. Jan. 14, 2011), nor is it likely that they are, given the administrative law judge's conclusion that the RFC that he assigned to the plaintiff "is supported by the opinion of Dr. William Hall[.]" Record at 21. Considering the record as a whole, I am not persuaded that the inaudibility of this word or words from Dr. Hall's testimony frustrates the court's ability to understand the nature or import of that testimony.

Finally, the plaintiff challenges the three "inaudible" omissions from Dr. Hall's testimony on page 54 of the transcript, which she characterizes as "the limitations Dr. Hall believed would be produced by the Plaintiff's impairment[]s." Itemized Statement at 12. In context, it is apparent that the first two "inaudible" passages deal with the question of whether "S. Green," who completed a physical RFC form, Record at 284-91, was a physician. That question does not affect my analysis of the sufficiency of the evidence in the record of this case to support the administrative law judge's conclusions, or to any other issue raised by the plaintiff.

The final "inaudible" on page 54 appears between the phrases "residual functional capacity testing" and "prohibition of repetitive or vigorous use for that upper extremity." The administrative law judge adopted the prohibition as to the left arm. *Id*. at 21, *see also id*. at Finding 5, Record at 18. Thus, it is likely that the words "of the upper left arm and" are inaudible. Again, the plaintiff offers no suggestion that any words even more favorable to her

claim are the ones missing from the transcript, and, again, the court's ability to understand the nature and the import of Dr. Hall's testimony has not been frustrated by the omission.

The plaintiff has not shown that she is entitled to remand based on the state of the hearing transcript.

## B.  Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion to remand (ECF No. 11-1) be **DENIED** and that the commissioner's decision be **AFFIRMED**.

### _NOTICE_

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 18th day of July, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge